No. 63,154

STATE OF KANSAS, *Appellee*, v. LESTER EUGENE TOLER, *Appellant*.

(787 P.2d 711)

Opinion filed March 2, 1990.

*Randy L. Baird*, of Topeka, argued the cause and was on the brief for appellant.

*Julie McKenna*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Lester Eugene Toler appeals from his convictions by a jury for possession of a stimulant with intent to sell, K.S.A. 1989 Supp. 65-4127b(b)(2); possession of drug paraphernalia, K.S.A. 65-4152; and unlawful use of weapons, K.S.A. 21-4201(1)(g) (possessing a shotgun with a barrel less than 18 inches in length). The only issue raised on appeal is the adequacy of the affidavit submitted in support of the search warrant.

On April 14, 1988, Sergeant Joseph Garman, of the City of Salina Police Department, executed an affidavit to obtain a search warrant for the property at 804 Greenbriar, Salina, Saline County, Kansas. The items sought included "methamphetamine, cocaine, drug paraphernalia, phone records, documents, any illegal narcotics as described by law, and monies." In support of his belief that this property would be found at the location to be searched, the officer listed: (1) a controlled buy of methamphetamine on April 14, 1988, at 804 Greenbriar from Phyllis Sprecker, who resided at that residence, by a confidential informant who had given the Salina Police Department reliable information in the

past; (2) complaints in January 1987 from neighbors suspecting the Spreckers of dealing drugs at their home at 1505 East Ellsworth; (3) a call on September 15, 1987, from a captain with the Department of Corrections, that Phyllis Sprecker was suspected of somehow smuggling drugs to an inmate; and (4) an anonymous Salina Crimestoppers tip, No. 87-122, on December 17, 1987, stating that Phyllis Sprecker was selling amphetamines out of her home at 914 Somerset and was ordering an ounce to a quarter of a pound every few days.

The search warrant was signed on April 14, 1988, at 8:30 p.m., by a judge of the District Court of Saline County, Kansas, authorizing a search of the one-story, single family dwelling as well as outbuildings, vehicles, or persons at 804 Greenbriar. The items sought were listed as "methamphetamine, cocaine, drug paraphernalia, phone records, documents, any illegal narcotic as described by law, and monies." The search warrant was executed at 9:40 p.m. on April 14, 1988. When the officers knocked, a babysitter answered the door and allowed the officers to enter. Present at the residence were the babysitter and six children. The officers seized numerous items during the search, including documents that indicated defendant resided at the residence with Phyllis Sprecker.

At the trial, Phyllis Toler, who was formerly Phyllis Sprecker but had recently married the defendant, testified that she sold drugs to pay bills for her and her children. She began living at 804 Greenbriar in June of 1987. Defendant moved in with her around February of 1988. She paid the bills for the household with defendant contributing his money from work. Phyllis testified that the drugs and paraphernalia found at 804 Greenbriar belonged to her and that defendant had not sold drugs for her. Defendant and Phyllis married sometime after the search.

In rebuttal, the State presented the confidential informant, who had made the drug purchase. He testified that he had purchased drugs from Phyllis Sprecker while defendant was present but had never purchased drugs from defendant. He further testified that he had previously been convicted of possession of cocaine and was on probation. The woman the confidential informant was living with had been busted and he had made the controlled buy

from Phyllis with the understanding that his girlfriend's charge would be reduced from sale to possession.

A motion to suppress was filed by defendant's counsel on June 30, 1988. The motion challenges the sufficiency of the affidavit to support the search warrant and, in paragraph 5, alleges that the affidavit contains false and misleading information. Defense counsel filed a supplemental motion to suppress evidence on August 8, 1988, because the affidavit relied upon information provided by a confidential informant who was on probation at the time under order of the Saline County District Court. Defendant argues that use of such probationer violated local district court Rule No. 4.108, which prohibits using a person on probation or parole as a confidential informant.

At the hearing on the motion to suppress conducted on August 10, 1988, defense counsel waived his argument that the affidavit contained false or misleading information, relying instead upon his argument that the affidavit was not valid on its face. Defendant presented no evidence. The court ruled that, under the totality of the circumstances test utilized by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), the affidavit was sufficient to support the issuance of the search warrant. Although the district court recognized that the confidential informant was used in violation of a local rule that prohibits use of a probationer as a confidential informant, the court held that the violation of this local administrative rule had no bearing upon the constitutional question of the adequacy of the search warrant. The court concluded that violation of the local rule should be enforced by contempt proceedings, not by suppression of the evidence.

The only issue before us is whether the information contained in the affidavit provided probable cause for issuance of the search warrant. Defendant attacks the affidavit on three grounds. First, he argues that the reliability and credibility of the confidential informant is not established. The affidavit merely alleges that the confidential informant "has given information to the Salina Police Dept. in the past that was proven reliable." The affidavit does not set forth the confidential informant's criminal history and does not reveal that he was currently on probation, that he had failed at rehabilitation by continuing to purchase drugs, and that using

him violated a local rule prohibiting the use of people on probation or parole as confidential informants in drug cases. Defendant recognizes that, following the United States Supreme Court decision in *Illinois v. Gates*, 462 U.S. 213, the trial court will no longer employ the two-pronged analysis of *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), and *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), to test the credibility and reliability of a confidential informant. Defendant argues that, in spite of employing the more relaxed test of totality of the circumstances in *Gates*, the United States Supreme Court still recognizes the value of corroborating the informant's tip by independent police investigation, citing *State v. Olson*, 11 Kan. App. 2d 485, 491, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986) (citing *Gates*, 462 U.S. at 241).

According to the decision in *Gates*, in determining whether probable cause exists to support a search warrant, the court must view the affidavit under the totality of the circumstances. This requires the issuing court "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

Prior to the decision in *Gates*, the courts had followed a two-pronged test to determine whether an affidavit contained probable cause, based upon prior United States Supreme Court decisions in *Spinelli* and *Aguilar*. Under this test, the affidavit was required to first show the "basis of knowledge" by stating the particular means by which the informant received the information given in his report. Second, the affidavit was required to establish either the veracity of the informant or the reliability of the information. *Gates*, 462 U.S. at 228-29. In *Gates*, the Court recognized that the elements of the two-pronged test are highly relevant considerations in the totality of the circumstances analysis that has traditionally guided a probable cause determination. But, under the totality of the circumstances, a deficiency in one aspect of the two-pronged test is not fatal and may be compensated for by determining the overall reliability of the tip, or some other strong indicia of reliability. Thus, the totality of the circumstances anal-

ysis permits a balanced assessment of the relative weights of all the various indicia of reliability and unreliability rather than encouraging an excessively technical dissection of informants' tips under the two-pronged test. *Gates*, 462 U.S. at 234-35.

The probable cause in *Gates* was based upon an affidavit that recited at length the contents of an anonymous letter detailing the activities of the Gateses. Mrs. Gates would drive their car to Florida and leave it to be loaded with drugs, while Mr. Gates would fly to Florida and drive the car back to their home in Illinois. In affirming the decision in *Gates*, the Court noted that the police in Illinois and in Florida had taken many steps to substantiate the allegations contained in the anonymous letter. 462 U.S. at 225-27. Notwithstanding that Justice Stevens, in his dissent, noted a material discrepancy in the anonymous letter, the majority concluded that a substantial basis existed for finding probable cause to search the Gates home and car.

In *Olson*, the trial court concluded that the affidavit offered to obtain the search warrant did not contain adequate information even under the totality of the circumstances to establish probable cause to support issuance of the warrant. Much of the information contained within the affidavit in *Olson* was erroneous or misleading. For example, the affidavit indicated that the confidential informant had provided the detective seeking the search warrant with information in the past and, based upon the past performance of this informant, the detective believed him to be a reliable and trustworthy person. Yet, at a hearing on a motion to suppress, it became clear that the information that was the basis of this statement was based upon events that had occurred during the arrest of the confidential informant six months earlier. Although all statements in the affidavit filed in support of the warrant were literally true, the appellate court noted that they "certainly conveyed a false meaning to the judge who issued the warrants." 11 Kan. App. 2d at 490. When the false and misleading information contained in the affidavit, which was based upon communication from the confidential informant, was stricken, probable cause no longer existed to support the search warrant.

The affidavit in *Olson* was attacked under the decision of *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). In *Franks*, the United States Supreme Court held that a

defendant is entitled to a hearing on the adequacy of a warrant affidavit if the defendant makes a substantial preliminary showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56. Although defendant in the present case initially alleged that the contents of the affidavit used in support of the search warrant contained false and misleading information, that allegation was withdrawn at the suppression hearing. No evidence was introduced at the suppression hearing which would show that the affidavit contained false or misleading information. Therefore, defendant's allegation that the affiant improperly withheld information from the court regarding the confidential informant's status as a probationer and continued drug user will not be considered by this court. Defendant had the burden and the opportunity to establish that the affiant knowingly and intentionally or with reckless disregard for the truth omitted relevant information when seeking the search warrant. Because this claim was not pursued at the suppression hearing, it cannot be argued as a ground for invalidating the search warrant on appeal.

Defendant also argues that the affidavit is inadequate because it does not contain information establishing the reliability or credibility of the allegations about Sprecker's selling drugs. Defendant notes that the officer admitted at trial that, at the time the confidential informant made the controlled buy on April 14, 1988, neither Sprecker nor defendant was under investigation for the sale of drugs. Finally, defendant attacks the affidavit as being "devoid of any implication of [defendant] in drug dealings." Quoting from *United States v. Sorrells*, 714 F.2d 1522, 1528 (11th Cir. 1983), defendant argues: " 'The focus of judicial inquiry should not be based upon a "grading of the paper" of the affiant, but rather, should be based upon whether the constitutional rights of the party subject to the search will be violated if the warrant is issued.' " Because the only information of drug activity contained within the affidavit was based upon statements by an individual on probation for drug offenses, and because nothing in the affidavit suggested defendant's involvement in illegal drug

activity, defendant argues that issuance of the warrant violated his constitutional rights.

The fact that neither defendant nor Sprecker was under active investigation as potential drug dealers does not prevent law enforcement officers from acting upon information received indicating that illegal drug activity is being conducted. Since the search warrant was issued to search the house at 804 Greenbriar, the innocence or guilt of the defendant was not relevant in determining if probable cause existed to issue the search warrant. The affidavit here contains detailed information explaining how the controlled buy was conducted. The confidential informant was searched prior to making the buy and was kept in sight until he entered the Sprecker residence at 804 Greenbriar. He turned over the methamphetamine to the waiting officers after leaving the residence. The informant specifically named Phyllis Sprecker as the person who sold him the drugs. When the search was conducted, the officers found numerous documents and personal belongings establishing that defendant also lived at 804 Greenbriar.

In addition to the information about the controlled buy, the affidavit also contains three other instances connecting one of the individuals living at 804 Greenbriar, Phyllis Sprecker, with prior incidents of suspected illegal drug activity. All three involved occurrences at previous residences where the Spreckers lived. One was a complaint from neighbors more than a year earlier. One occurred seven months previously when Phyllis Sprecker was suspected of providing an inmate with drugs. The third, occurring four months earlier, was an anonymous Crimestoppers tip.

In *State v. Rose,* 8 Kan. App. 2d 659, 663-64, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983), the Court of Appeals held that the decision of *Illinois v. Gates* would be applicable in Kansas. In adopting *Gates,* the court in *Rose* discussed the use of an informant who received favorable treatment although admitting to be a coconspirator and thereby subjecting himself to criminal liability. The Court of Appeals stated:

" 'Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge un-

necessary. *Adams v. Williams* [407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972)]. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.' " 8 Kan. App. 2d at 663 (quoting *Illinois v. Gates*, 462 U.S. at 233-34).

The court in *Rose* found no difficulty in finding probable cause to support issuance of the search warrant. The court noted that the informant had been in the residence and had observed the contraband, had previously helped transport truckloads of marijuana to the residence, and had described in detail criminal conduct that had occurred on two other occasions, which lent reliability and verified criminal conduct.

Although the confidential informant was not named in the affidavit here, he did implicate himself in the criminal conduct by participating as a coconspirator in the purchase of illegal drugs and thus subjecting himself to criminal liability. The affidavit also detailed the circumstances surrounding the controlled buy. Finally, the affidavit contained additional information which would indicate prior involvement in illegal drug activities by the party the confidential informant named as selling the drugs at the residence listed in the search warrant. Based upon the totality of the circumstances test of *Gates*, the affidavit was sufficient to provide information establishing probable cause to believe that contraband or evidence of a crime would be found at the place named in the search warrant. We conclude that the district judge was justified in issuing the search warrant based upon Sergeant Garman's affidavit. The constitutional rights of the defendant were not violated by issuance of the search warrant.

The judgment of the district court is affirmed.