(787 P.2d 1211)

No. 63,978

STATE OF KANSAS, *Appellant*, v. JAMES BARTLETT, a/k/a "TUDOR" BARTLETT, *Appellee*.

Opinion filed March 9, 1990.

*Nanette L. Kemmerly-Weber*, county attorney, and *Robert T. Stephan*, attorney general, for the appellant.

*Robert V. Talkington* and *Robert F. Chase*, of Talkington & Chase, of Iola, for the appellee.

Before DAVIS, P.J., GERNON, J., and C. FRED LORENTZ, District Judge, assigned.

DAVIS, J.: This is an interlocutory appeal by the State from an order suppressing evidence seized pursuant to a search warrant. After the defendant was bound over, the trial court reversed itself by suppressing evidence seized from the defendant's residence based upon its finding that the affidavit did not provide probable cause for the issuance of the warrant and that, based upon *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989), the good faith exception to the exclusionary rule was not applicable. We reverse and remand for further proceedings.

The facts, as stated by the trial court, are not in dispute:

"On September 20, 1988, Kansas Bureau of Investigation Agent James Young and Allen County Sheriff Ron Moore conducted an aerial search of

farms in eastern Allen County in an attempt to locate growing marijuana. A growing patch of marijuana plants was located on a farm owned by Clyde Bartlett, the father of the defendant. During the afternoon of September 21 a search warrant was issued authorizing law enforcement officers to search the Clyde Bartlett farm. The warrant was executed the morning of September 22nd.

"At approximately 12:00 noon on September 22nd officers obtained a warrant for the arrest of James Bartlett and a search warrant for his residence. The complaint filed against James Bartlett charges him with the crime of possession of marijuana with intent to sell. The affidavits filed in support of the complaint and application for search warrant contain identical language:

'At 9:30 a.m. on 9-22-88 special agent James Young and Tom Williams, of the K.B.I. executed a search warrant at the Clyde Bartlett residence NW 1/4 Sec. 3, Twp. 25 S, Range 21 E. The agents found 50 plus marijuana plants growing, tied to stakes, with black water pipe leading to old well. Other items associated with the cultivation of marijuana were seen through an open 1/2 door of a milk shed near the plants. Clyde Bartlett returned to residence while warrant was being executed and the warrant was read to him. Mr. Bartlett stated he did not farm - that his son James "Tudor" Bartlett does all farming and has control of the fields and buildings. Clyde Bartlett also told the agents that Charles "Chuckie" Hurd is employed by his son to assist in farming.'

"During their search of the James Bartlett home and detached garage officers seized quantities of marijuana and cocaine, guns, and numerous other items believed by officers to be evidence of the crime charged. The home of James Bartlett is located approximately one mile from the farm owned by his father where the growing marijuana was found."

## Standard of Review

When called upon to review the magistrate's issuance of a search warrant, the duty of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Abu-Isba,* 235 Kan. 851, Syl. ¶ 3, 685 P.2d 856 (1984) (following *Illinois v. Gates,* 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 103 S. Ct. 2317 [1983]). In *Illinois v. Gates,* the United States Supreme Court also stated: "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " 462 U.S. at 236. In a subsequent case, the United States Supreme Court reversed a decision suppressing evidence, holding:

"The Supreme Judicial Court also erred in failing to grant any deference to the decision of the Magistrate to issue a warrant. Instead of merely

deciding whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause, the court conducted a de novo probable-cause determination. We rejected just such after-the-fact, de novo scrutiny in *Gates.*" *Massachusetts v. Upton*, 466 U.S. 727, 732-33, 80 L. Ed. 2d 721, 104 S. Ct. 2085 (1984).

Although *Illinois v. Gates, Massachusetts v. Upton,* and *State v. Abu-Isba* each involved review by an appellate court, the standard of review established by these cases is equally applicable when review is by a trial court. Thus, the issue in this case is not whether probable cause actually existed, but whether the issuing judge had a "substantial basis" for concluding that it did.

## Totality of the Circumstances Approach

At the crux of the trial court's decision to suppress the evidence was the court's conclusion that the affidavit contained no evidence showing "that drug-related activities were occurring at the James Bartlett residence." While it is true that there was no direct evidence of drug-related activities at defendant's residence, such evidence is not required, under the "totality of the circumstances" approach to probable cause, if it is reasonable under all the facts and circumstances disclosed in the affidavit to believe that the articles sought are located at his residence.

The United States Supreme Court rejected specific, elaborate tests for determining probable cause in favor of a "totality of the circumstances" approach. In *Illinois v. Gates,* the Court explained:

"Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a 'practical, nontechnical conception.' *Brinegar v. United States*, 338 U.S. 160, 176 (1949). 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding 'particularized suspicion,' is also applicable to the probable-cause standard:

'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'

"As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. at 231-3*.*

Kansas courts have subsequently adopted the "totality of the circumstances" approach put forward by the United States Supreme Court in *Illinois v. Gates.* See *State v. Doile,* 244 Kan. at 500-01; *State v. Abu-Isba,* 235 Kan. at 854. Thus, in deciding whether to issue the warrant,

"a magistrate should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that a crime has been committed and that the defendant committed the crime, or that contraband or evidence of a crime will be found at a particular place." *Doile,* 244 Kan. 493, Syl. ¶ 4; *Abu-Isba,* 235 Kan. 851, Syl. ¶ 3.

Although the precise question raised in this case has not been decided by Kansas courts, we have no hesitancy in concluding that a magistrate may issue a search warrant for a suspect's residence if the magistrate has probable cause to believe that the suspect possesses the items sought even though there is no direct evidence that the items are located at the residence. Numerous federal courts dealing with a similar question have concluded that, in the absence of direct evidence, the totality of circumstances may support a conclusion that probable cause exists to search a defendant's residence.

A leading case is *United States v. Rahn,* 511 F.2d 290 (10th Cir.), *cert. denied* 423 U.S. 825 (1975). The Bureau of Alcohol, Tobacco & Firearms (ATF) learned that Rahn, an ATF agent, had taken and still possessed confiscated weapons he had certified as destroyed. Based on this information, the ATF obtained a warrant to search Rahn's residence. 511 F.2d at 291-92.

On appeal, Rahn argued that the affidavit did not demonstrate probable cause to believe that the items sought would be found at his residence. The Tenth Circuit disagreed. It began its analysis by noting:

" 'The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely

to hide stolen property.' " 511 F.2d at 293 (quoting *United States v. Lucarz*, 430 F.2d 1051 [9th Cir. 1970]).

The court then stated: "The issue for our determination is whether the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located at appellant's residence." 511 F.2d at 293.

Turning to the facts of the case, the Tenth Circuit concluded that the absence of "anyone's observation of the property at the residence" was "not fatal to a determination that probable cause existed to search the residence." The court explained that there was probable cause to believe that Rahn still possessed the weapons and that it was reasonable to assume that his house was where he kept such things as weapons. The court considered that, although "there are other places where the guns *might* have been stored . . . we believe these facts and circumstances gave the magistrate probable cause to believe that the weapons would be found as a result of the search of appellant's present residence." 511 F.2d at 293-94.

See *United States v. Lucarz*, 430 F.2d at 1055 (where affidavit gave probable cause to believe that postal employee had stolen contents of registered mail pouch, it was reasonable, based on the nature of the materials stolen and the suspect's opportunity for concealment, to believe that the materials would be found at his residence); *United States v. Samson*, 533 F.2d 721, 723 (1st Cir.), *cert. denied* 429 U.S. 845 (1976) (where suspect brought handguns to informant's apartment, exhibited them for sale, and then left with them, it was "a fair inference" that guns would be found at suspect's apartment); *United States v. Maestas*, 546 F.2d 1177 (5th Cir. 1977) (where affidavit alleged that suspect was part of counterfeiting ring and had received and passed counterfeit checks, it was reasonable to believe that counterfeiting paraphernalia would be found in her apartment); *United States v. Hendershot*, 614 F.2d 648, 653-54 (9th Cir. 1980) (where suspect in bank robbery was arrested ten days after robbery, it was reasonable to search his car for clothing, weapons, and disguises used in the robbery and for missing money); *United States v. Rich*, 795 F.2d 680, 682 (8th Cir. 1986) (where informant told police that suspect had various drugs and a gun, but only methaqualone and cocaine were found on suspect upon his arrest,

it was reasonable to assume that the gun and remaining drugs would be found in suspect's luggage, home, or motel room); and *U.S. v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988), *cert. denied* 488 U.S. 1031 (where suspect was attempting to sell a .45 caliber pistol with a silencer that had been used to kill a police officer, "[i]t was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence" even though the affidavit contained no direct facts to that effect).

We believe that the rule stated in these cases is a sound application of the "practical, common-sense" approach adopted by the United States Supreme Court in *Illinois v. Gates* and followed by the Kansas Supreme Court in *Abu-Isba* and *Doile*. Like the Tenth Circuit in *Rahn*, we also believe that this rule is one which has long been followed in our courts, albeit without express recognition.

We hold that a magistrate may issue a warrant to search a specific place if, based on the facts and circumstances described in the affidavit, it is reasonable to believe that the articles sought are located at the place to be searched. In making this determination, a magistrate should consider the type of crime alleged, the nature of the items sought, the extent of the suspect's opportunity for concealment, and normal inferences as to where a person would be likely to keep the items sought.

Applying this rule to the facts of this case, we believe that the affidavit presented the issuing judge with a substantial basis, as a matter of law, to believe that the items sought were located on the defendant's farm or inside his residence. When the officers searched the farm of defendant's father, they found more than 50 growing marijuana plants. The plants were tied to stakes and connected to an irrigation system. Other items associated with the cultivation of marijuana were seen through the open half-door of a nearby milkshed. Clearly, somebody was cultivating marijuana on the farm and, considering the amount of marijuana involved, which is more than a person would be likely to consume on his own, it was reasonable to believe that the marijuana was being cultivated for sale.

While the officers were conducting their search, defendant's father arrived and told the officers that his son, the defendant,

did all the farming and had control over the fields. If the defendant was harvesting and selling marijuana, one would expect to find cultivation equipment, packaging equipment and materials, and records of sales somewhere nearby. To expect a suspect to transport equipment and unpackaged marijuana over large distances is simply not realistic. Since these materials were not found on the farm of defendant's father, the next logical place to look was on the farm of the defendant. Defendant's farm was located only a mile away, and the short distance between the two farms meant that defendant could quickly and easily transport equipment and marijuana between the two farms without an undue risk of detection. And since defendant's farm contained both his place of business and his residence, it was reasonable to assume that this was where defendant would package and sell marijuana.

Remembering that probable cause is a practical, common-sense conception turning upon the probabilities of everyday life (*Illinois v. Gates*, 462 U.S. at 231-32), and that our review is limited to whether the issuing judge had a "substantial basis" for concluding that probable cause existed to search defendant's farm and residence (*State v. Abu-Isba*, 235 Kan. 851, Syl. ¶ 3), we conclude that a "substantial basis" to search defendant's farm and residence existed as a matter of law. Accordingly, the trial court erred in holding that the search warrant should not have issued.

### "Good Faith" Exception

Based upon our conclusion that as a matter of law there was a substantial basis for the issuance of the warrant, we need not address the trial court's conclusion that the good faith exception does not apply.

We would note, however, that the "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897, 918, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). Exclusion is not appropriate

"when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form

with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 920-21.

Accordingly:

"[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." 468 U.S. at 926.

Reversed and remanded for further proceedings consistent with this opinion.