(827 P.2d 1215)
No. 66,466

STATE OF KANSAS, *Appellee*, v. GREGORY G. SIDEL, *Appellant*.

Opinion filed March 13, 1992.

*Kiehl Rathbun*, of Wichita, for appellant.

*Rachelle Smith*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before REES, P.J., RULON and LEWIS, JJ.

RULON, J.: Defendant, Gregory Sidel, directly appeals from his conviction of possession of marijuana, K.S.A. 1991 Supp. 65-4127b, contending (1) the issuance of a warrant to search his residence was not based upon probable cause, and (2) the district court abused its discretion when imposing sentence. We affirm.

The material facts are as follows:

On March 12, 1990, Drug Task Force Agent Bruce Watts applied to a United States Magistrate for the District of Kansas for a warrant to search the residence and outbuildings at 2050 S. Main in Wichita. Attached to this application was Watts' supporting affidavit. A warrant was issued on the basis of the application and affidavit.

In the course of the search, paraphernalia relating to marijuana use, literature regarding marijuana farming, apparatus consistent with farming marijuana, and small amounts of marijuana were seized. Eventually, the defendant moved to suppress this evidence. The district court denied the motion to suppress, and the defendant was found guilty after a bench trial. Later, the defendant was sentenced to one year of incarceration in the county jail.

## THE SEARCH WARRANT

The affidavit supporting the application for the challenged search warrant provides as follows:

### "AFFIDAVIT

"I, Bruce W. Watts, being duly sworn, do hereby state and depose that I am a Task Force Agent with the United States Department of Justice, Drug Enforcement Administration, hereinafter called 'DEA', having been so employed for approximately three months. I am vested with the authority to investigate violations of Federal law, including Title 21, United States Code. In the course of my employment with DEA and the Wichita Police Department Narcotic Section, I have received training in the illegal cultivation of marijuana and experience in other illegal drug operations during my two years as a narcotics investigator. Upon my oath, I state that I believe the following facts to be true based on my training and experience in regard to narcotics investigations and I know the following to be true:

"That marijuana cultivators keep calendars and other paper regarding the type of marijuana seed planted, the date the marijuana seed was planted, and the dates of watering and fertilizing, since the cultivation period is approximately two to five months;

"That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances;

"That drug traffickers commonly 'front' (provide drugs on consignment) to their clients; that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them;

"That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

"That the magazine known as 'High Times' is a magazine devoted to the cultivation of marijuana, the publishing of prices of illegal substances throughout the United States, and the techniques utilized by law enforcement authorities to locate and seize illegal marijuana growing operation, as well as illegal clandestine drug laboratories, and that the magazine 'High Times' advertises paraphernalia which is used in the illegal manufacture of controlled substances, and that the intent of the magazine is directed at non-law abiding citizens;

"That a company known as 'The Seed Bank', Postbus 5.6576 ZA Ooy, The Netherlands, advertises in 'High Times' as an authorized retailer of several types of marijuana seeds;

"Your affiant knows that cultivators of marijuana typically use marijuana seeds in the growing of marijuana. Your affiant knows that cultivators of marijuana sometimes utilize the hydroponics systems and this system consists, among other parts, of large halide or sodium filled light bulbs, transformers, electrical wiring, chemicals and timers, all of which are utilized to conceal the marijuana growing operations, since it is an indoor operation and little or no natural sunlight is needed. Using large halide or sodium filled light bulbs known as 'grow lights' results in the use of large amounts of electricity, which is reflected in monthly utility bills.

"Your affiant received information that marijuana seeds have been sent on three different occasions to the address of 2050 S. Main, Wichita, Sedgwick County, Kansas during the year of 1989.

"Your affiant also received information that on July 18, 1989 a package from the URBAN TEK GROWERS SUPPLY, P.O. Box 574, Veñadak, WA 99037 was sent to 2050 S. Main. The URBAN TEK COMPANY advertises in 'High Times' as an authorized retailer of hydroponics growing systems.

"Your affiant then proceeded in checking the electric bills of the residence to determine if the residence had excessively high billing fees, and verified the excessively high bills through Kansas Gas & Electric Company. Between January 1989 and March 1990, the monthly electric bill for 2050 S. Main ranged between $32.00 and $113.00. In checking two other addresses next to 2050 S. Main, the monthly electric bills ranged between $12.00 and $32.00 between January 1989 and March 1990. Upon checking these houses, your affiant estimates that they are all similar in size.

"Your affiant also checked with the Wichita Water Department and verified the excessively high bills at 2050 S. Main. Between October 1987 and February 1990, the bi-monthly water bill ranged from 9750 gallons of water to 52,500 gallons of water. In checking two houses next to 2050 S. Main, your affiant verified the water bills to range between 750 gallons of water and 8250 gallons of water bi-monthly during the period October 1987 and February 1990.

"Your affiant, using the Kansas Gas & Electric Company and the Wichita Water Department verified that Arlene G. MOOMEY is the current resident at 2050 S. Main, Wichita, Kansas. Your affiant, using the Wichita Police Department's computer, verified that Arlene G. MOOMEY and Arlene G.

SIDEL are one and the same person. Your affiant also learned that there are several Wichita Police reports on file with the names; Greg SIDEL, Arlene G. MOMMEY [sic], and Arlene G. SIDEL all using the address of 2050 S. Main.

"On March 4, 1990 at 10:00 PM, your affiant walked by 2050 S. Main and observed aluminum foil taped to the inside of the windows on the south side of the residence. It is a common practice for indoor grow rooms to have the windows covered to prevent the high intensity light from being seen through the glass.

"On November 9, 1989 at 10:43 PM, an unknown caller called the Wichita Police Department Narcotics Section stating Greg SIDEL and his mother are growing and selling marijuana in the house located at 2050 S. Main.

"Based on the above, it is my belief that there is probable cause to authorize a warrant for the search of the premises of 2050 S. Main, Wichita, Kansas 67213 and seizure of contraband, paraphernalia used in an indoor growing operation concerning in particular the illegal manufacture and cultivation of marijuana, records, documents, ledgers, and literature concerning the manufacture, cultivation and distribution of marijuana.

"FURTHER AFFIANT SAYETH NOT

/s/ Bruce W. Watts
Bruce W. Watts
Task Force Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 12th day of March 1990

/s/ John B. Wooley
John B. Wooley
U.S. Magistrate"

Defendant specifically contends the search warrant is unsupported by facts sufficient to establish reliability or probable cause. In support of this claim, defendant principally relies upon three Kansas cases. *State v. Toler*, 246 Kan. 269, 787 P.2d 711 (1990); which reaffirmed *State v. Walter*, 234 Kan. 78, 670 P.2d 1354 (1983); *State v. Rose*, 8 Kan. App. 2d 659, 665 P.2d 1111 (1983). These cases discuss the principles set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), that the reliability and veracity of information presented by anonymous informants in an application or affidavit for a search warrant are to be judged by the "totality of the circumstances" rather than the two pronged *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) analysis. Defendant asserts the "totality of the circumstances" test does not relieve the State of the burden of proving reliability

and credibility, but merely changes the analytic framework of judicial scrutiny. *State v. Olson,* 11 Kan. App. 2d 485, 726 P.2d 1347 (1986).

On the other hand, the State argues, in reviewing whether the issuance of the search warrant was supported by probable cause, our duty is simply to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. *State v. Bartlett,* 14 Kan. App. 2d 237, 238, 787 P.2d 1211, *rev. denied* 246 Kan. 769 (1990). Additionally, the State contends "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *State v. Bartlett,* 14 Kan. App. 2d at 238 (citing *Illinois v. Gates,* 462 U.S. at 236).

The district court, in denying the motion to suppress, found that probable cause was established by the tip that a package had been sent by a hydroponics growing systems dealer to 2050 S. Main, coupled with either the tip that marijuana seeds had been sent to the address or the tip that Sidel and his mother were growing and selling marijuana at the address. The court concluded two unknown or unverified statements could support a finding of probable cause.

We believe that although the source and reliability of an un-identified informant's information no longer solely determines whether an affidavit supports a finding of probable cause, "[t]hese remain viable factors to be considered. [Citation omitted]. There must be some indicia of accuracy of the informant's information. [Citation omitted.]" *State v. Hemme,* 15 Kan. App. 2d 198, 201, 806 P.2d 472, *rev. denied* 248 Kan. 998 (1991), *cert. denied* ___ U.S. ___(October 7, 1991).

In *State v. Olson,* 11 Kan. App. 2d 485, 726 P.2d 1347, *rev. denied* 240 Kan. 805 (1986), the district court determined certain statements made in an affidavit were false and that after these statements were excised, no probable cause was shown. It thus suppressed the evidence found during the execution of the search warrants issued on the basis of the affidavit. 11 Kan. App. 2d at 486. On appeal, this court agreed with the district court that after certain statements were excised, the affidavit did not establish probable cause. We acknowledged that while an affidavit

must be viewed under the totality of the circumstances to determine whether it supports a finding of probable cause and that informant reliability no longer must be proven, "there must be some indication that the informant's tip is accurate." We further recognized that in cases lacking evidence of the informant's reliability or credibility, independent police investigation is valuable in corroborating the informant's tip. 11 Kan. App. 2d at 491.

In both appellate briefs, the parties cite and rely upon three Kansas cases supporting their respective theory on the existence, or lack thereof, of probable cause. We shall briefly revisit them.

In *State v. Rose*, 8 Kan. App. 2d 659 this court concluded that under the totality of the circumstances, probable cause existed for the search warrant which was issued in that case. The supporting affidavit in *Rose* named the informant who had provided the critical information to the affiant. The informant also stated that he had personally observed the contraband which was the subject of the warrant, and described criminal activity which had occurred on two previous occasions. The occurrence of this prior criminal activity was verified by law enforcement officers, so this verification supplied an indicia of reliability to that informant's tip. The equivalent of this verification or indicia of reliability is lacking in the current case. 8 Kan. App. 2d at 663-64.

Similarly, verification of the informant's tip was present in *State v. Walter*, 234 Kan. 78, where the Supreme Court found the challenged search warrant to be supported by probable cause. In *Walter*, the sheriff stated in his supporting affidavit he received an informant's tip that the informant had seen marijuana growing on the described premises. The sheriff stated that he then went to the premises and observed from a public road what he believed to be marijuana growing on the premises. 234 Kan. 78, 79. Thus, the sheriff's personal observation provided an indicia of reliability to the informant's tip.

In *State v. Toler*, 246 Kan. 269, 787 P.2d 711 (1990), a police sergeant executed an affidavit for a warrant to search an address for drugs, drug paraphernalia, and various other items evidencing drug dealing. In support of this request, the sergeant listed: (1) a controlled buy of drugs on a certain date at the address by a confidential informant who had provided reliable information to the police department in the past; (2) complaints made by former

neighbors at another address approximately 15 months earlier that the residents of the address sought to be searched were dealing in drugs; (3) a call approximately seven months earlier from Department of Corrections personnel that one of the residents was suspected of smuggling drugs to an inmate; and (4) an anonymous Crimestoppers tip that one of the residents was dealing in drugs. 246 Kan. 269, 270. The defendant challenged the affidavit as a source of probable cause for the issuance of the warrant, claiming the reliability and credibility of the confidential informant and of the allegations of drug dealing were not established. 246 Kan. at 271, 274.

In concluding that the affidavit presented probable cause, the *Toler* court emphasized the informant's participation in a controlled drug buy:

"Although the confidential informant was not named in the affidavit here, he did implicate himself in the criminal conduct by participating as a co-conspirator in the purchase of illegal drugs and thus subjecting himself to criminal liability. The affidavit also detailed the circumstances surrounding the controlled buy. Finally, the affidavit contained additional information which would indicate prior involvement in illegal drug activities by the party the confidential informant named as selling the drugs at the residence listed in the search warrant. Based upon the totality of the circumstances test . . ., the affidavit was sufficient to provide information establishing probable cause to believe that contraband or evidence of a crime would be found at the place named in the search warrant. We conclude that the district judge was justified in issuing the search warrant based upon Sergeant Garman's affidavit. The constitutional rights of the defendant were not violated by issuance of the search warrant." 246 Kan. at 276.

In *Toler*, the controlled buy at the address sought to be searched by the informant thus provided an indicia of reliability to the statements in the affidavit. Although an unidentified informant's reliability does not control the probable cause determination when examining an affidavit for a search warrant, the issuing magistrate must have a substantial basis from which to conclude probable cause for the warrant existed. As part of this substantial basis, there must be some indication that the informant's information is accurate. In applying the totality of the circumstance test here, Agent Watts's affidavit does not contain any indication that the three tips from the unknown or unidentified source or sources are accurate. Nor does the information

learned by Agent Watts through his independent investigation corroborate the information contained in the three tips. We believe the affidavit simply does not provide a substantial basis for the determination of probable cause.

However, the defendant is not entitled to relief from this court because "where the trial court reaches the correct result based upon the wrong reason, [an appellate] court will affirm the trial court." *State v. Durst*, 235 Kan. 62, 69, 687 P.2d 1126 (1984).

We believe the good faith exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), saves the issuance of the search warrant here. Our Supreme Court discussed the *Leon* exception in *State v. Probst*, 247 Kan. 196, 203-04, 795 P.2d 393 (1990):

"In *Leon* the court traces the history and purpose of the exclusionary rule. Highly summarized, the exclusion of evidence which the police have unlawfully obtained is a penalty aimed at the police and is imposed to deter future wrongful conduct. A strong theme running throughout *Leon* is that evidence seized under a search warrant subsequently held to be invalid is not to be suppressed absent some chicanery or wrongdoing by the police. *Leon* refers to this as the good faith exception to the exclusionary rule. This is somewhat of a misnomer, as the opinion makes it clear that such evidence is not to be excluded unless bad faith is shown. As *Leon* states: 'We . . . conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' 468 U.S. at 918. Hence, *Leon* states that the evidence so seized is not to be excluded unless it is shown: (1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. *United States v. Leon*, 468 U.S. at 923. [Citation omitted.]" 247 Kan. at 203-04.

Here, the defendant does not claim the executing officer believed the warrant was invalidly issued by a judicial officer or that the officer's belief in the warrant's validity was unreasonable. Our review of the record indicates there is no evidence to support such a claim even if asserted. We are convinced the application of *Leon* to the facts presented to us require this court's affirmance of the district court's refusal to suppress the evidence.

## ABUSE OF DISCRETION IN SENTENCING

Defendant rests his contention of abuse of discretion on two points. He first claims the district court's remarks at sentencing indicate the court considered a crime other than that of which defendant was convicted. Defendant additionally asserts the sentencing court failed to make a record of the sentencing factors listed in K.S.A. 21-4606.

The State responds that defendant's sentence is within the statutory limits and that the record demonstrates the district court did consider the pertinent factors when sentencing defendant. We agree with the State.

The district court sentenced defendant to one year in the county jail. The crime of which defendant was convicted, possession of marijuana, is a class A misdemeanor, K.S.A. 1991 Supp. 65-4127b(a). Pursuant to K.S.A. 1991 Supp. 21-4502(1)(a), imprisonment for a class A misdemeanor shall be a definite term of confinement in the county jail, not to exceed one year. Clearly, defendant received the maximum sentence.

Our Supreme Court has settled this issue by saying:

"This court has held that it is the better practice, when the sentence exceeds the minimum, for the trial court, on the record, to make a detailed statement of the facts and factors considered by the court in imposing sentence. However, a trial court's failure to make such a detailed statement does not necessarily demonstrate an abuse of discretion; each case must be considered on its facts. [Citations omitted.] Also, it is a familiar rule that a sentence which is within the statutory limits will not be disturbed on appeal provided it is within the realm of discretion on the part of the trial court and not a result of partiality or prejudice. [Citation omitted.]" *State v. McGlothlin*, 242 Kan. 437, 438, 747 P.2d 1335 (1988).

Defendant argues the court failed to make a record of its consideration of the factors enumerated in K.S.A. 21-4606 and thus abused its discretion. Our review of these factors, however, indicates most are inapplicable to the crime for which defendant was being sentenced, possession of marijuana.

The district court did consider defendant's prior criminal record, pursuant to K.S.A. 21-4606(2)(a). Furthermore, our review of the record indicates the sentencing court was well aware that defendant was convicted of possession of marijuana. The sentencing court's reference to the large number of growing plants found in defendant's possession indicates the court was merely

considering the nature and circumstances of defendant's crime pursuant to K.S.A. 21-4606(1). The defendant's sentence of one year in the county jail is within the statutory limits. The district court did not abuse its discretion.

Affirmed.