NOT DESIGNATED FOR PUBLICATION

No. 113,616

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTONIO M. INGRAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed June 17, 2016.
Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: Antonio M. Ingram was charged with one count of possession of cocaine after the police used Charles Murphy, who was in custody on unrelated drug charges, to set up a drug deal. Murphy did not know the real name of the man with whom he set up the drug deal, but he was able to identify the man's car as it pulled up to the meeting spot. Ingram was the driver of the car, and cocaine was found inside. After the district court denied Ingram's motion to suppress, the case proceeded to a bench trial on stipulated facts. The district court found Ingram guilty, and Ingram now appeals, arguing

1

the district court wrongly denied his suppression motion. We disagree and affirm Ingram's conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2012, while in custody on unrelated drug charges, Murphy agreed to help the Kansas City, Kansas, Police Department with a drug investigation. He made a recorded phone call to an individual known to him from a prior occasion as "T." In the phone call, Murphy and T talked about a "basketball." One of the officers involved in the investigation testified that based on his training and experience, a "basketball" meant an 8-ball, or 3.5 grams, of crack cocaine. Murphy suggested T meet him at a liquor store where they had met previously, and T said he would be there shortly.

T later called Murphy back and said he was almost to the liquor store. Police officers set up surveillance on the store, taking Murphy with them so that he could identify T. Murphy told the officers that T drove a silver car with tinted windows. As the officers and Murphy watched the liquor store from across the street, they saw a silver Mitsubishi Gallant pull into the parking lot. The car matched Murphy's description, and Murphy identified it as T's car. Murphy then told the officers that T liked to keep an 8-ball of crack cocaine in the headliner of his car.

Other officers approached the car, identified themselves, and asked the driver to get out and move to the rear of the car. As Murphy and the officers he was with were driving away, Murphy identified T as the driver of the car. T was later identified as Ingram. Police officers searched the driver's seat area and headliner of Ingram's car, as Murphy's tip had been relayed to them. After they found a plastic bag in the headliner, Ingram was placed in handcuffs and taken into custody. A field test of the plastic bag's contents indicated the presence of cocaine. The test results were later confirmed through laboratory testing.

2

The State charged Ingram with one count of possession of cocaine. Ingram filed a motion to suppress all illegally seized evidence, arguing that the police did not have reasonable suspicion to stop him, no exigent circumstances were present, and the search of his car was not a valid search incident to arrest. The State filed a written response, countering that the automobile exception to the warrant requirement applied and that the police properly and legally searched Ingram's car.

The district court held a bifurcated hearing on Ingram's motion. Murphy refused to testify, asserting his right against self-incrimination. The State presented testimony from two police officers and the audio recordings of the phone calls between Murphy and Ingram. Ingram and his female passenger testified at the hearing that the police officers who searched the car yanked them both out of the car and immediately arrested Ingram, placed him in a police car, and drove him away.

After taking the matter under advisement, the district court issued a written order denying Ingram's motion. The district court found that the police legally searched Ingram's car and properly seized the drugs. Ingram then agreed to proceed to a bench trial on stipulated facts, at which the district court found Ingram guilty of the single count of possession of cocaine, a severity level 5 drug felony. Finding that Ingram had a criminal history score of G, the district court sentenced Ingram to 18 months' probation with a 15-month underlying prison sentence.

Ingram timely appeals.

DID THE DISTRICT COURT ERR IN DENYING INGRAM'S MOTION TO SUPPRESS?

Ingram first argues that because the State failed to present sufficient evidence of Murphy's veracity and basis of knowledge, the police did not have probable cause to search his car and the district court erred in denying his motion to suppress.

3

> "Our review of an evidence suppression issue is bifurcated. Without reweighing the evidence, [we first consider whether] the district court's findings . . . are supported by substantial competent evidence. [Citation omitted.] The district court's legal conclusions are then reviewed de novo. If there are no disputed material facts, the issue is a question of law [subject to] unlimited review. [Citation omitted.]" *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013).

It first should be noted that while defense counsel did not verbally object to the admission of the evidence recovered in the search of Ingram's car at the bench trial on stipulated facts, defense counsel did object to the district court's denial of Ingram's motion to suppress. The district court acknowledged that objection and noted that the right to appeal had been preserved. Our Supreme Court has held that when the same judge who conducted the suppression hearing presides over a bench trial on stipulated facts, appellate review of a suppression issue is not barred by the lack of a contemporaneous objection. *State v. Bogguess*, 293 Kan. 743, 747, 268 P.3d 481 (2012). Because the same judge presided over the motion hearing and the bench trial, we conclude Ingram has properly preserved this issue for review.

Both the Fourth Amendment to the United States Constitution, incorporated to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights protect individuals from unlawful searches and seizures. *State v. Garza*, 295 Kan. 326, 331, 286 P.3d 554 (2012). "[A] warrantless search . . . is per se unreasonable . . . unless the [search fits] one of the recognized exceptions to the warrant requirement." *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). One such exception is probable cause plus exigent circumstances. 294 Kan. at 55. A subclass of the probable-cause-plus-exigent-circumstances exception is the automobile exception, which states that a vehicle's mobility provides, without the necessity of proving anything more, exigent circumstances. 294 Kan. 50, Syl. ¶ 4. "'Probable cause' to search a vehicle can be established if the totality of the circumstances indicates there is a 'fair probability' that the vehicle contains contraband or evidence. [Citation omitted.]" 294 Kan. at 55.

4

"A determination of probable cause should not be based simply upon a determination that there were informants; reliability of the information is a factor." *State v. Ibarra*, 282 Kan. 530, 544, 147 P.3d 842 (2006). While an informant's veracity and basis of knowledge previously formed the two-prong test used to determine whether an affidavit to a search warrant supported a finding of probable cause, the United States Supreme Court rejected that test in favor of the totality of the circumstances analysis. See *State v. Toler*, 246 Kan. 269, 272-73, 787 P.2d 711 (1990) (discussing *Illinois v. Gates*, 462 U.S. 213, 228-29, 234-35, 103 S. Ct. 2317, 76 L. Ed. 2d 527 [1983]). In that analysis, the court acknowledged that an informant's veracity and basis of knowledge remain highly relevant considerations in the totality of the circumstances, but "a deficiency in one aspect of the two-pronged test is not fatal and may be compensated for by determining the overall reliability of the tip, or some other strong indicia of reliability." 246 Kan. at 272. Further, in some instances, corroboration by an independent police investigation may cure deficiencies in the informant's veracity and basis of knowledge. *Ibarra*, 282 Kan. at 549. The State bears the burden of showing that a search or seizure was lawful. *State v. Johnson*, 293 Kan. 959, 963, 270 P.3d 1135 (2012).

Here, Murphy knew Ingram from a prior occasion. He told police that Ingram drove a silver car with tinted windows and that they had previously met at the liquor store. During Murphy's phone call to Ingram, the men talked about a basketball, which one of the police officers testified was a reference to drugs. Murphy also knew that Ingram liked to keep an 8-ball of drugs in the headliner of his car. Shortly after Ingram called Murphy and said that he was about 5 minutes from the liquor store, a car matching the description that Murphy had given to police was seen pulling into the liquor store parking lot. Murphy identified that car as Ingram's. Individually, these circumstances might be too coincidental to constitute probable cause, but when taken together—and especially considering the short amount of time that elapsed—the totality of these circumstances indicated that there was a fair probability that drugs would be found in Ingram's car.

Ingram claims the State failed to produce any evidence of Murphy's basis of knowledge for what Ingram's car looked like or where he liked to keep his drugs. But according to one officer's testimony, not only did Murphy tell police that he knew Ingram from a prior occasion, but he also said that they met before at the same liquor store. These two statements and the evidence establish that Murphy had a basis of knowledge for knowing what type of car Ingram drove and that he kept drugs in the headliner of his car. Ingram's claim that the only basis of knowledge that can be inferred from Murphy's statements is that he had a general knowledge of drug activity is incorrect.

Ingram also claims, relying on *State v. Landis*, 37 Kan. App. 2d 409, 418-419, 156 P.3d 675, *rev. denied* 284 Kan. 949 (2007), that the State was required to make some showing of the veracity of Murphy, including information about Murphy's reliability and independent corroboration of Murphy's statements. Ingram is correct that the State did not present any evidence showing that the police knew Murphy was credible or reliable or had corroborated his statements through an independent investigation. However, a lack of evidence concerning an informant's veracity is not fatal to a probable cause determination and may be compensated by the overall reliability of the information or other evidence of reliability. *Toler*, 246 Kan. at 272. In this instance, the evidence of Murphy's basis of knowledge and the short time frame in which the events occurred demonstrated that the information provided by Murphy was reliable and compensated for the lack of evidence of Murphy's veracity by an independent investigation.

Further, *Landis* is distinguishable from this case. The informant in *Landis* told the police several different stories about where she got her marijuana. After the informant stuck to a story, the police used the information provided by her in an affidavit for a search warrant of Landis' home. In this case, the record does not indicate that Murphy was in custody for possessing drugs that he had purchased from Ingram. Moreover, no evidence was produced showing that Murphy vacillated or that the information he provided was otherwise inconsistent. Finally, the information provided by Murphy was

6

used to set up a sting operation, not used in an affidavit for a search warrant. This distinction is important because Murphy scheduled a drug deal with Ingram and told the police what Ingram's car looked like and where the drugs would be found. Ingram called Murphy and said he was close to the meeting spot, shortly after which a car matching Murphy's description and then identified by Murphy as Ingram's car, was seen arriving at the liquor store. The closeness in time to which these events occurred further indicated there was a fair probability that drugs would be found in Ingram's car.

Therefore, based on the totality of the circumstances, the police had probable cause to search Ingram's car. Because the police had probable cause, the automobile exception to the warrant requirement applied, the search was legal, and the district court did not err in denying Ingram's motion to suppress.

DID THE DISTRICT COURT ERR BY USING INGRAM'S CRIMINAL HISTORY SCORE IN DETERMINING HIS SENTENCE?

Ingram also argues that the use of his criminal history to calculate his guidelines sentence was unconstitutional since those past convictions were not proved in this case to a jury. See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Our Supreme Court has rejected this argument on more than one occasion, and we reject it as well. See *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002).

Affirmed.

7