(665 P.2d 1111)

No. 54,040

STATE OF KANSAS, *Appellee,* v. GREGORY BLAINE ROSE, *Appellant.*

Opinion filed June 23, 1983.

*J. Steven Schweiker,* of Overland Park, for appellant.

*Joseph E. Cosgrove, Jr.,* assistant district attorney, *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is a direct appeal from convictions for resisting arrest (K.S.A. 21-3808), possession of marijuana with intent to

sell (K.S.A. 65-4105[d][10]; K.S.A. 65-4127b[b][3]), and conspiracy to sell marijuana (K.S.A. 65-4105[d][10]; K.S.A. 65-4127b[b][3]; K.S.A. 21-3302).

Defendant was charged with a number of crimes that allegedly occurred over an eight-month period. He was acquitted of two counts of conspiracy to commit murder of two police officers and one count of conspiracy to commit arson of the Overland Park Justice Center. Those conspiracies were alleged to have commenced on November 26, 1980.

On December 15, 1980, an Overland Park police officer observed defendant riding a motorcycle during which time, in the officer's opinion, the defendant committed three traffic offenses. It was nighttime and the officer followed defendant to his home where he parked the motorcycle at the side of the house. During a pat down search, the officer found two semiautomatic handguns in the defendant's waistband and placed defendant under arrest for carrying concealed weapons. A scuffle ensued and defendant was also charged with resisting arrest. At trial, defendant presented evidence that the pistols were in a compartment of the motorcycle until he stopped on his own property, at which time he placed them on his person to take them into his home. The jury acquitted defendant of carrying a concealed weapon, but convicted him of resisting arrest. Defendant appeals from that conviction, contending the arrest was unlawful and that he was entitled to resist it.

Defendant was also charged with and convicted of possession of marijuana with the intent to sell and conspiracy to possess marijuana with the intent to sell. The conspiracy count allegedly occurred between the spring of 1980 and January 17, 1981. The possession with intent to sell allegedly occurred on January 18, 1981. Defendant attacks the sufficiency of the evidence to support his conviction of possession with intent to sell, the sufficiency of the affidavit used as the basis for a search warrant, and the denial of his motion to separate what he alleges to be "usable" from "nonusable" marijuana.

I. Search Warrant.

Defendant argues that the affidavit used as the basis for a search warrant did not adequately show the reliability of the informant nor that the information from the informant was reliable. The State argues that defendant had no reasonable expec-

tation of privacy in the premises and thus no standing to raise the issue; further, that the informant's reliability was established by his providing police with accurate information concerning prior criminal conduct by himself and defendant, and the reliability of the informant's information was established by his declaration against his penal interest.

The trial court did not consider the "legitimate expectation of privacy issue." It appears the issue has considerable merit, but we need not decide it for we believe the affidavit to be sufficient in view of *Illinois v. Gates,* 462 U.S. _____, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983), in which the "two-pronged test" under *Spinelli v. United States,* 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), has been abandoned. In its place, the United States Supreme Court has adopted the traditional probable-cause determination of the "totality of the circumstances"; *i.e.,* whether based on all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place.

In *Gates,* a police department received an anonymous handwritten letter which read as follows:

"This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.

"They brag about the fact they never have to work, and make their entire living on pushers.

"I guarentee [*sic*] if you watch them carefully you will make a big catch. They are friends with some big drugs dealers, who visit their house often.

　　"Lance & Susan Gates
　　Greenway
　　in Condominiums"

462 U.S. at _____ _____ ., 76 L.Ed.2d at 540.

The police were able to verify that Mr. Gates had reservations to West Palm Beach, Florida, on May 5. Surveillance disclosed that when Mr. Gates arrived in West Palm Beach, he spent the night in a motel room registered to Susan Gates. The following

morning, he left the motel with an unidentified woman. They were in a Mercury automobile bearing license plates registered to a Hornet station wagon owned by Gates and proceeded north on an interstate frequently used by travelers going to the Chicago area. A search warrant was issued for the Gates' residence and their automobile. The search disclosed 350 pounds of marijuana in the trunk of the car and marijuana, weapons and other contraband in the Gates home. The trial court ordered suppression of the items and the decision was affirmed by the Illinois appellate courts.

In adopting the totality of the circumstances approach to ascertain whether the evidence presented to obtain a search warrant presents probable cause to believe contraband or evidence is located in a particular place, the United States Supreme Court stated:

"This totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a 'practical, nontechnical conception.' *Brinegar v. United States*, 338 U.S. 160, 176 (1949). 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Id.* at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding 'particularized suspicion,' is also applicable to the probable cause standard:

" 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'

". . . Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' [Citations omitted.]

". . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or

evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. [Citation omitted.] . . . ." *Illinois v. Gates,* 462 U.S. at _____, 76 L.Ed.2d at 543-48.

The court went on to reason that an informant who is right about some things is more probably right about others, and thus the evidence before the magistrate, when viewed in its totality, furnished a substantial basis for the magistrate to conclude that probable cause to search the Gates home and car existed.

We have no reason to believe the Kansas Supreme Court would take a different position and hold that the Kansas Constitution requires Kansas to adopt a rule similar to that in *Spinelli* and *Aguilar.* Thus, all prior Kansas decisions applying *Spinelli* and *Aguilar* that are inconsistent with *Illinois v. Gates* will no longer be followed by this court.

When the affidavit before us is viewed in the light shed by *Gates,* we have no difficulty concluding the magistrate had probable cause to issue the search warrant. The informant was named in the affidavit. He admitted to being a coconspirator and thereby subjected himself to criminal liability. Defendant argues that the informant had an understanding he would not be prosecuted if he testified. We note the United States Supreme Court discussed that issue in *Gates,* stating:

"Likewise, if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. *Adams v. Williams* [407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972)]. Conversely, even if we entertain some doubt as to an informant's motives, 'his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case. Unlike a totality of circumstances analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip, the 'two-pronged test' has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate." *Illinois v. Gates,* 462 U.S. at _____, 76 L.Ed.2d at 545-46.

Here, the informant had been in the residence and observed the contraband; he had previously helped transport truckloads of marijuana to the residence. In addition, he described in detail criminal conduct that had occurred on two other occasions that would lend reliability, and, in fact, it was verified that criminal

conduct had taken place at the time and in the manner indicated although it was not verified that the defendant participated as alleged.

We conclude the trial court correctly found that probable cause existed for the issuance of the challenged search warrant.

II. Substantial Competent Evidence.

The standard of review for this court, when a defendant claims the evidence was insufficient to support a conviction, was recently stated in *State v. Morgan,* 231 Kan. 472, Syl. ¶ 5, 646 P.2d 1064 (1982):

"The standard of review on appeal for determining whether evidence is sufficient to support a conviction is whether the evidence when viewed in the light most favorable to the prosecution convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt."

Defendant argues that the evidence did not prove an intent to sell the marijuana and did not prove he had access to or control of the seized marijuana. His argument seems to be based on evidence that he did not live where the marijuana was found and did not have a key to the house. In *State v. Bullocks,* 2 Kan. App. 2d 48, 49-50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978), this court stated:

" 'Possession' of marijuana is having control over the marijuana with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence. *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 [1976]. Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. *State v. Woods,* 214 Kan. 739, 744, 522 P.2d 967 [1974]."

The record here is replete with testimony that defendant was a principal in a marijuana growing and processing operation, with the processing operation taking place where the marijuana was seized. Defendant was often at the premises (on an almost daily basis). There were large sums of money kept at the house in a safe that could not be opened without defendant's presence and participation. Ample evidence is in the record from which a rational factfinder could conclude beyond a reasonable doubt that defendant had access to and the right of control over the marijuana. We also conclude a rational factfinder could reasonably infer from the evidence that defendant had possession of the marijuana with the intent to sell it. Two witnesses did testify that although the principals had sold large quantities of marijuana in

the past, what was seized was being held for the personal consumption of those involved. The jury was not required to believe them and obviously it did not.

The defendant had in his possession and under his control 26 trash bags of marijuana and another trash bag containing 13 grocery sacks of marijuana. In addition, the following items were seized in the house where the marijuana was found: $20,750 in cash along with two H & K .308 assault rifles, two .45-caliber rifles, an M2 carbine, a helmet, three bullet-proof vests, and miscellaneous items used to process marijuana and "hash oil." Evidence was introduced of prior sales and how money was distributed, of a convoy method of transporting marijuana from Noel, Missouri, to Kansas and of growing marijuana in Kansas protected by an electric fence and alarm system. A large quantity of marijuana was seized (an expert for the State testified there were at least 80 ½ pounds of saleable marijuana and another 75 ½ pounds of marijuana). In addition, one witness (Lauramore) testified to defendant's intent to sell a portion of the seized marijuana after it was processed into "hash oil," a plan that was apparently abandoned because of difficulties encountered in processing.

III. Usable v. Nonusable.

Defendant attempted to obtain a court order allowing the State and one of the defendants to separate the usable marijuana (what the defendant believed to be saleable) from the nonusable. Defendant cites no authority for his argument. The trial court, in our opinion, correctly decided that whether the marijuana was usable as contended by defendant went to the weight of the evidence. The State had the burden of proving what was marijuana and it did so. The fact that part of it was stems, branches and twigs, which defendant alleges no one smokes, goes only to the weight the jury might give on the issue of intent to sell. Defendant argues that the State stipulated to his suggestion, but the record does not support that contention. At most, the State was ambivalent. Some 150 pounds of vegetation was involved and the State's chemist conceded a part of that weight was stems, stalks and roots. He also testified that 13 ¾ pounds consisted of the prime parts of the plants and another 66 ¾ pounds were a normal mix that one would find in a hand-rolled joint or "baggie" of marijuana. One bag weighing 5 pounds was mostly all stem

and stalk parts, and the remaining 70 ½ pounds included some large stems and stalk parts which were fairly long and coarse and ratiowise (presumably top parts to stems) "not a lot."

We conclude the trial court did not err in its ruling on defendant's motions concerning his "usable" versus "nonusable" argument.

IV. Constitutionality of K.S.A. 21-3217.

The defendant contends K.S.A. 21-3217 is unconstitutional because it authorizes deprivation of liberty without due process of law. The only authority cited is *State v. Bowen,* 118 Kan. 31, 234 Pac. 46 (1925), where the Supreme Court stated that a person has the right to resist an unlawful arrest and to use such force as is reasonably necessary for that purpose.

We deem it unnecessary to consider the constitutionality of K.S.A. 21-3217, because defendant's argument is premised on the arrest being unlawful. In our opinion, the arrest was based on probable cause and thus was lawful. The police officer testified he observed the defendant on a cycle going 45 mph in a 25 mph zone, and that defendant made two turns without signaling before pulling into a residence. The officer had been told previously that defendant lived at that address, was possibly armed and should be considered dangerous. He did not intend to arrest the defendant. He did intend to give the defendant traffic tickets and called for a backup. It was nighttime and the main source of light came from the officer's car. The defendant did not fully cooperate and the officer frisked him. The officer did not personally know defendant and did not testify he knew it was defendant; but he was aware defendant lived at that house and the cycle was parked at the side of the garage, not in the driveway where a visitor would normally park. In our opinion, under the facts known to him, the officer was justified in "frisking" the defendant. *Adams v. Williams,* 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972); *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); 3 LaFave, Search & Seizure § 9.4, 118-19 (1978). When he did so, he discovered two semiautomatic handguns in the defendant's waistband and placed him under arrest. A struggle that ensued during the cuffing process was the basis for the resisting arrest charge. Having so held, we need not reach the argument raised by defendant.

Affirmed.