NOT DESIGNATED FOR PUBLICATION

No. 117,833

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONTE TRAYVON WESTMORELAND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed June 29, 2018. Affirmed.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellant.

*James W. Garrison*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM: Donte Trayvon Westmoreland appeals his convictions and sentencing for the crimes of possession of marijuana with intent to distribute and conspiracy to distribute marijuana. Westmoreland raises two issues. First, he contends there was insufficient evidence to prove that he committed the drug offenses beyond a reasonable doubt. Second, Westmoreland claims his due process rights were violated when the district court declined to grant him additional time to obtain a more complete mental health evaluation prior to sentencing. Upon our review, we find no error. Accordingly, we affirm the convictions and sentences.

1

Westmoreland was charged with: (1) conspiracy to distribute at least 450 grams but less than 30 kilograms of marijuana; (2) possession of at least 450 grams but less than 30 kilograms of marijuana with intent to distribute; (3) conspiracy to distribute methamphetamine; and (4) possession of methamphetamine with intent to distribute. The following is a brief summary of the evidence presented at the jury trial.

Officer Nicholas Blake testified that on March 8, 2016, he was traveling from Salina to Junction City in a marked police car. He observed two vehicles, a Lexus with no rear license plate and a Hyundai with a Nevada license plate, traveling in close proximity to each other. Officer Blake confirmed that the Hyundai was seen in California only two days previously. Both vehicles had considerable road grime, which Officer Blake believed was consistent with driving through Colorado or another snowy area.

Based on his training and experience in drug investigations, Officer Blake suspected the two vehicles were an escort/decoy vehicle and load vehicle jointly engaged in trafficking illegal drugs. Officer Blake explained:

> "A decoy car is a vehicle that the group of people want law enforcement to stop, or have contact or draw your attention to that vehicle so that maybe you pull them over or you search their vehicle, something to that effect, where your time is tied up with them, and then the load vehicle doesn't get stopped or doesn't get messed with.
> "Or an escort vehicle can be a lookout for police. Where they drive up ahead, and as they see maybe a police officer sitting in the median or police officers on traffic stops and then they'll communicate that to the vehicle that has the contraband, hey, there's a police officer up here, take an exit or slow down or something to that affect.
> "The ultimate goal is to get the vehicle with the contraband through without law enforcement contact."

Officer Blake passed the two vehicles but kept them under observation. After about seven minutes, the Hyundai passed the Lexus and the patrol car. Officer Blake noticed registration violations on both vehicles and contacted Lieutenant Justin Stopper to create a plan for conducting a traffic stop on both vehicles once they entered Geary County.

After the Hyundai passed Officer Blake, the vehicle alternated between slowing down and speeding up and eventually increased its distance from Officer Blake's vehicle. On the other hand, the Lexus was traveling much slower than the speed limit which caused Officer Blake to eventually lose sight of both vehicles. Once Officer Blake reached Geary County, he stopped in a median and waited for the Lexus to pass his location but he never saw the vehicle.

Lieutenant Stopper testified that he stopped the Hyundai for displaying an obstructed license plate. Dashaun Perkins was the driver and Westmoreland was the passenger. Lieutenant Stopper noted that both men appeared highly stressed. During the traffic stop, the lieutenant noticed three cell phones in the vehicle; two smartphones and one flip-style phone. Westmoreland's phone had a navigation application open that indicated the men were taking exit 303, which leads to Manhattan, Kansas. Upon smelling the odor of marijuana and viewing small pieces of marijuana on the console, Lieutenant Stopper searched the Hyundai. He found a glass jar containing a small amount of marijuana in the trunk of the vehicle.

Lieutenant Stopper believed the Hyundai was acting as an escort vehicle for the Lexus which was the suspected load vehicle. The lieutenant released Perkins and Westmoreland with the goal of locating the Lexus. Lieutenant Daryl Ascher was notified of the situation, and he assisted in surveilling the Hyundai.

3

Lieutenant Ascher testified that he followed the Hyundai to an apartment complex in Manhattan. At the time, he was dressed in plain clothes and drove an unmarked vehicle. He continued surveillance once the Hyundai parked at the apartment complex. Lieutenant Ascher watched as Perkins and Westmoreland left the Hyundai and met Jacob Gadwood, a resident of the apartment complex.

About 20 minutes later, the Lexus arrived at the apartment complex, and Perkins, Westmoreland, and Gadwood began motioning for the vehicle to park. The occupants of the Lexus, Victor Lara, Enrique Hinojosa, and Jose Jimenez, left the vehicle and all five men entered Gadwood's apartment.

Lieutenant Ascher testified that, after a few minutes, Perkins and Westmoreland left the apartment. Perkins placed a plastic bag in the trunk of the Hyundai and began to drive slowly down the alley towards Lieutenant Ascher. The lieutenant believed that Perkins was conducting counter-surveillance. After Perkins made eye contact with Lieutenant Ascher (who attempted to hide), Perkins returned to the parking lot and met with Westmoreland. The two men then began walking rapidly away from the apartment complex but they were detained by officers. Meanwhile, the three men who had arrived in the Lexus, jumped out of Gadwood's apartment window and fled the area.

Officers searched the Lexus. Several vacuum sealed packages of marijuana and pills containing methamphetamine were discovered inside the vehicle's doors. Nothing in the Lexus linked Westmoreland to the vehicle. Moreover, Lieutenant Ascher did not see Westmoreland go inside the Lexus.

After marijuana and methamphetamine were found packed inside the Lexus, Perkins and Westmoreland were arrested. Officer Blake searched Westmoreland and located a broken flip-style phone or burner phone, which Officer Blake indicated was a

4

type of phone commonly used for trafficking in illegal drugs. No direct evidence of drug activity was found on the phone.

Lieutenant Ascher interviewed Gadwood. Gadwood admitted that the officers had interrupted a drug deal. According to Lieutenant Ascher, Gadwood confessed that Westmoreland was delivering a pound of marijuana that Gadwood had purchased from him. Gadwood agreed to become an informant and testified at trial as a witness for the State.

At trial, Gadwood testified that Westmoreland was in his apartment to sell him marijuana. Gadwood planned on purchasing a "pound or two" of marijuana from Westmoreland. He had met Westmoreland a week earlier and paid him $1,800 for the pound of marijuana he was to receive on March 8, 2016. During this visit, Westmoreland also informed Gadwood about paying for marijuana through his clothing line website.

According to Gadwood, upon Westmoreland's arrival at the apartment, he told Gadwood about the interaction that he and Perkins had with the police. Westmoreland advised that the two men had attempted to attract the attention of the police by driving faster in order to get a speeding ticket. Among the five individuals who arrived at his apartment, Gadwood only knew Westmoreland. Gadwood and the group planned on traveling to Kansas City to distribute the rest of the contraband to Gadwood's friend.

Gadwood also testified that after the Lexus arrived, he gave Westmoreland and Perkins a butter knife to pry open the Lexus' door panel. The two men returned to Gadwood's apartment with pills, which Gadwood believed were ecstasy. After Gadwood explained that he did not want the pills, Westmoreland and Perkins returned to the parking lot to retrieve the marijuana. After Westmoreland and Perkins observed Lieutenant Ascher, however, they became suspicious and walked away from Gadwood's apartment. Lara, Hinojosa, and Jimenez tried calling Westmoreland to warn him, but he

5

did not answer. After a police canine vehicle arrived, Gadwood told Lara, Hinojosa, and Jimenez to jump out the back window of his apartment.

A search of Gadwood's apartment revealed the pills and the packaging material which matched the packaging material found in the Lexus. Other controlled substances and paraphernalia were found in Gadwood's apartment.

The jury found Westmoreland guilty of possession of marijuana with intent to distribute and conspiracy to distribute marijuana. He was found not guilty of the charges related to methamphetamine. Upon his convictions, Westmoreland was sentenced to a controlling term of 92 months in prison. Westmoreland appeals.

SUFFICIENCY OF THE EVIDENCE

Westmoreland contends there was insufficient evidence for the jury to convict him of possession of marijuana with intent to distribute and conspiracy to distribute marijuana. Our standard of review provides:

> "When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citations omitted.]" *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

6

We will separately address the sufficiency of the evidence as it relates to the two drug convictions.

*Possession of Marijuana with Intent to Distribute*

Westmoreland challenges the sufficiency of the evidence for his conviction of possession of marijuana with intent to distribute. He argues there was insufficient evidence to show he was ever *in possession* of the marijuana discovered in the Lexus.

The jury instruction setting forth the elements of the crime of possession of marijuana with intent to distribute required the State to prove:

"1. The defendant possessed marijuana/THC with intent to distribute.
"2. The quantity of the marijuana/THC possessed with intent to distribute was at least 450 grams but less than 30 kilograms.
"3. This act occurred on or about the 8th day of March, 2016, in Riley County, Kansas."

The jury instruction was consistent with PIK Crim. 4th 57.020 (2014 Supp.); see K.S.A. 2017 Supp. 21-5705(a), (d)(2)(C).

What is meant by possession? Possession is defined as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2017 Supp. 21-5701(q). The jury instructions in this case substantially provided the same definition of possession. As the statutory definition shows, "[p]ossession may be immediate and exclusive, *jointly held with another or constructive, as when marijuana is kept by the accused in a place where he has some measure of access and right of control.*" (Emphasis added.) *State v. Rose*, 8 Kan. App. 2d 659, Syl. ¶ 5, 665 P.2d 1111 (1983). Of course, possession may be proven by circumstantial evidence. 8 Kan. App. 2d at 664.

7

When a defendant is not in exclusive possession of the premises in which drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to prove possession absent other incriminating circumstances linking the defendant to the drugs. *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). Such incriminating circumstances include: (1) the defendant's incriminating statements or suspicious behavior, (2) the defendant's previous participation in the sale of drugs or use of narcotics, (3) the defendant's proximity to the area where drugs are found, and (4) finding the drugs in plain view. 304 Kan. at 434.

In this case, there was substantial evidence of incriminating circumstances showing that Westmoreland jointly and constructively possessed the marijuana in the Lexus. Gadwood testified that he gave Westmoreland $1,800 to purchase the marijuana, indicating that Westmoreland had an ownership interest in the contraband. Westmoreland arrived at Gadwood's apartment as part of a five person, two vehicle convoy with the sole purpose to sell Gadwood a pound of the marijuana hidden in the Lexus. As recounted by Gadwood, Westmoreland told him that he and Perkins attempted to divert the police from stopping the Lexus, which necessarily protected the contraband from discovery. Gadwood also gave Westmoreland a knife to pry open the door panels of the Lexus and retrieve the marijuana. In fact, Westmoreland was going back outside to the parking lot to retrieve the marijuana from the Lexus when Lieutenant Ascher's surveillance was noticed. Finally, Westmoreland attempted to escape the scene, clearly indicating guilty knowledge of the nearby marijuana.

Based on the totality of this evidence, viewed in the light most favorable to the State, a rational fact-finder could have reasonably found that Westmoreland jointly and constructively possessed the large quantity of marijuana hidden in the Lexus. As a result, there was sufficient evidence to support Westmoreland's conviction of possession of marijuana with intent to distribute.

*Conspiracy to Distribute Marijuana*

Next, Westmoreland challenges the sufficiency of the evidence for his conviction of conspiracy to distribute marijuana.

The elements of conspiracy are: (1) an agreement between two or more persons to commit or assist in committing a crime; and (2) the commission by one or more of the conspirators of an overt act in furtherance of the object of the conspiracy. *State v. Hill*, 252 Kan. 637, 641, 847 P.2d 1267 (1993).

Westmoreland first argues that the State failed to produce sufficient evidence of the alleged overt act. Under K.S.A. 2017 Supp. 21-5302(a): "No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator."

The jury instructions in this case required the State to prove that "[t]he defendant or any party to the agreement acted in furtherance of the agreement [to distribute marijuana] by driving to Manhattan, Kansas, from California in a vehicle containing controlled substances." Westmoreland claims the State failed to prove that the Lexus contained controlled substances for the duration of the drive from California to Manhattan, Kansas. He speculates that the Lexus could have been packed with contraband in Colorado, after the vehicle left California.

As a matter of semantics, we question Westmoreland's interpretation of the alleged overt act. We understand the overt act to be that Westmoreland participated in the transportation and delivery of the marijuana in furtherance of the conspiracy. As detailed in the Factual and Procedural Background section, there was substantial and convincing evidence that Westmoreland engaged in this overt act. Still, under Westmoreland's strict,

9

literal reading, there was also sufficient evidence the Lexus contained marijuana as the vehicle was driven from California to Manhattan.

There was circumstantial evidence that the marijuana secreted in the Lexus originated in California. Gadwood testified about the base price of "[Westmoreland] and his people in California" for a pound of marijuana. The State presented evidence that Westmoreland had traveled in the decoy vehicle, the Hyundai, from Stockton, California. Lara, the registered owner who occupied the Lexus when it arrived in Manhattan, was also from Stockton, California. Importantly, the Hyundai was located in northern California only two days prior to its arrival in Manhattan, accompanying the drug laden Lexus. The State also presented evidence that Perkins (who was an occupant of the Hyundai) and Jimenez (who was an occupant of the Lexus) had traveled from California.

In addition to the evidence that the Hyundai and Lexus traveled from California to Manhattan, the long distance of travel and short duration of the cross-country trip with minimal clothing and no suitcases, coupled with the fact that the large quantities of marijuana and methamphetamine were carefully packaged and, with obvious effort, secreted inside the Lexus, provided circumstantial evidence that the contraband was packed in the Lexus in California for the trip to Manhattan. When viewed in the light most favorable to the State, a rational fact-finder could reasonably determine that the controlled substances were in the Lexus for the duration of the trip from California.

Westmoreland also argues that the State failed to produce sufficient evidence of an agreement to distribute marijuana. As noted earlier, an agreement is an essential element of the crime of conspiracy. K.S.A. 2017 Supp. 21-5302(a). Here, the jury was instructed that Westmoreland could only be found guilty of conspiracy if he "agreed with others to commit distribution of at least 450 grams but less than 30 kilograms of marijuana/THC."

To establish an agreement, the State must prove "'the conspirators had a mutual understanding or tacit agreement, a meeting of the minds, for the accomplishment of the common purpose.'" *Hill*, 252 Kan. at 641 (quoting *State v. Roberts*, 223 Kan. 49, 52, 574 P.2d 164 [1977]). As provided in the jury instructions, and consistent with PIK Crim. 4th 53.060 (2012 Supp.), "[t]he agreement may be established in any manner sufficient to show understanding. It may be oral or written, or inferred from all of the facts and circumstances." The existence of an agreement does not require direct proof. "[I]t is enough if the parties tacitly come to an understanding in regard to the unlawful purpose, and this may be inferred from sufficiently significant circumstances. [Citation omitted.]" *State v. Swafford*, 257 Kan. 1023, 1040, 897 P.2d 1027 (1995); *State v. Kettler*, 299 Kan. 448, 471, 325 P.3d 1075 (2014).

The record includes substantial and compelling evidence of an agreement between Westmoreland and his co-conspirators to distribute marijuana. Gadwood testified that Westmoreland was at his apartment with the four other men to sell him marijuana and that he already paid Westmoreland for the pound of marijuana he was to receive on March 8, 2016. The State presented evidence that Westmoreland was traveling cross-country together with the other four men in a two vehicle convoy to distribute the contraband. Westmoreland and Perkins aided the conspiracy by traveling in the decoy vehicle and trying to draw the attention of the police to protect the load vehicle. Finally, the five men intended to further their drug distribution enterprise by delivering illegal drugs to Gadwood's friend in Kansas City. All of this evidence, considered in its totality, showed that Westmoreland and his co-conspirators had a mutual understanding to accomplish a common goal—to distribute marijuana. The evidence was clearly sufficient to establish the element of agreement as part of the crime of conspiracy.

In the final analysis, the evidence, when viewed in a light most favorable to the prosecution, was sufficient for a rational fact-finder to find Westmoreland guilty of possession of marijuana with intent to distribute and conspiracy to distribute marijuana.

11

Westmoreland contends he was denied his due process rights when the district court declined to fully grant his second requested continuance of sentencing in order to complete a mental health evaluation.

Westmoreland was convicted on February 17, 2017. On that date, sentencing was scheduled for April 3, 2017. On March 29, 2017, Westmoreland retained new counsel. That same day, Westmoreland requested a continuance of sentencing. The State did not object. The district court granted Westmoreland a five week continuance and rescheduled the sentencing for May 8, 2017.

On April 20, 2017, Westmoreland requested an additional three month continuance of sentencing. In particular, he requested a continuance to early August 2017, to enable a mental health provider, Mary Williamson, to complete a psychosocial assessment, evaluation, and mental health summary. To complete her report, Williamson required six sessions in addition to the intake session that Westmoreland had already completed. Westmoreland asserted that all the sessions could not be completed until July 10, 2017, and Williamson needed one additional week to draft her summary report after the last session was completed.

Based on Williamson's preliminary report, Westmoreland argued for the additional continuance, claiming that Williamson's evaluation would show that he lacked substantial capacity for judgment when the offense was committed due to a physical or mental impairment—a statutorily listed factor in considering a sentencing departure. See K.S.A. 2017 Supp. 21-6815(c)(1)(C). The State objected to Westmoreland's second continuance motion.

The district court granted Westmoreland's motion in part and continued sentencing for an additional two weeks, but denied the request to continue sentencing to August 2017. The district court agreed with the State that the additional time requested was too far beyond the dates of Westmoreland's trial and convictions. The district court noted that Westmoreland's trial ended in February and it had already granted the defense a five-week continuance of the sentencing hearing. As a result, the district court continued the sentencing hearing to May 22, 2017.

Prior to sentencing, Westmoreland filed a departure motion requesting a downward dispositional departure to probation or, in the alternative, a downward durational sentence to a term less than the guideline sentencing range. Attached to the departure motion was an assessment summary from Williamson, which noted that Westmoreland had completed three of the six 60-minute sessions. The assessment summary stated:

> "Mr. Westmoreland is exhibiting symptoms associated with PTSD which includes painful guilt feelings, persistent symptoms of anxiety, difficulty falling asleep, hypervigilance, and difficulty concentrating or completing tasks and exaggerated startle response. Individual who have experienced traumatic events have a significant amount of cognitive turmoil and emotional distress daily. Mr. Westmoreland has intrusive ruminative thoughts which cause him to think about his distressing set of life circumstances even when he does not want to. These ruminative thoughts limit his ability to concentrate and to make appropriate decisions. This writer will need additional time to assess the severity, duration and proximity of his exposure to the traumatic experiences in his early life."

At the May 22, 2017 sentencing, Westmoreland renewed his motion to continue sentencing so Williamson could complete her evaluation. The district court judge noted that Westmoreland's evaluation was not complete, but denied the renewed motion, reasoning: "I thought there was sufficient time given and even though it was a

13

provisional finding, I understand that your client has been diagnosed with PTSD and some other depression issues . . . I've read that and so we will proceed today . . . ."

After hearing arguments on Westmoreland's departure motion, the district judge commented that he was impressed with the presentation:

"You, as your attorney has so ably stated, have come from a community that has had—doesn't give every young person an opportunity as maybe as much as we might have in Kansas, and you have done well considering that, plus your initial family. You never knew your father, your mother basically abandoned you, you were raised by a grandmother, and then you stepped in and took care of your grandmother, so I am very impressed with what you've accomplished with such odds stacked against you, and I commend you for that. You have helped take care of a couple brothers. You've given the Court a lot to think about."

Ultimately, the district court denied Westmoreland's departure motion and sentenced him to a controlling term of 92 months in prison.

A district court's refusal to grant a request for a sentencing continuance is reviewed for an abuse of discretion. *State v. Beaman*, 295 Kan. 853, 862-63, 286 P.3d 876 (2012). However, whether a defendant's constitutional right to due process has been violated is a question of law over which an appellate court exercises unlimited review. *State v. Smith-Parker*, 301 Kan. 132, 165, 340 P.3d 485 (2014). The State does not contest Westmoreland's assertion that our court exercises unlimited review over this issue.

At sentencing, a defendant is entitled to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. *State v. Easterling*, 289 Kan. 470, 476, 213 P.3d 418 (2009). The Due Process Clause "requires a sentencing court to assure itself that the information upon which it relies to establish a sentence is reliable

14

and accurate and to ensure that the defendant has been given an effective opportunity to rebut the allegations likely to affect his or her sentence." 289 Kan. 470, Syl. ¶ 1.

In support of his argument, Westmoreland relies on an opinion from a Kentucky case, *Hunter v. Commonwealth*, 869 S.W.2d 719 (Ky. 1994). The defendant in *Hunter* was charged with capital murder. Prior to trial, the court ordered an evaluation of the defendant's competency and requested information on any defenses or mitigating factors based on the defendant's mental health. The report was filed less than two weeks before trial and failed to address guilt phase defenses or sentencing phase mitigating circumstances. Hunter filed a motion to continue trial in order to be evaluated by a private psychiatrist. The motion was denied and the court dismissed any need for evaluating the defendant's mental state with regard to defenses or mitigating factors.

After Hunter was found guilty, he twice requested a continuance of the penalty phase, which was scheduled to begin the next working day. In the second motion, the defendant requested a 24-hour continuance so a private psychiatrist could evaluate him and possibly testify the next day. Both motions were denied and the defendant was sentenced to death. Upon review, the Supreme Court of Kentucky determined that due process required the district court to allow a reasonable amount of time for the defendant to have practical access to a psychiatrist in this death penalty case. 869 S.W.2d at 723. As a result, the Kentucky Supreme Court held that the trial court violated the defendant's due process rights by denying his pre- and post-trial continuance motions. 869 S.W.2d at 722-24.

The facts here bear no resemblance to those in *Hunter*. Unlike the defendant's sentencing in *Hunter*, which was scheduled on the next business day after he was convicted, Westmoreland's sentencing was initially scheduled about a month and a half after Westmoreland was convicted. The district court then granted two continuances of the sentencing hearing, ultimately giving Westmoreland more than three months to obtain

a mental health evaluation in support of the departure motion. This was a reasonable amount of time for Westmoreland to have access to mental health professionals and obtain evidence in support of his departure motion.

Indeed, at sentencing Westmoreland was able to provide the district court with a comprehensive argument in support of his departure motion. This argument included letters, certificates, articles, and statistics on sentencing in marijuana distribution cases. Westmoreland also provided Williamson's provisional evaluation, which informed the district court that Westmoreland exhibited poor concentration, indecision, and "ruminative thoughts [that] limit his ability to concentrate and to make appropriate decisions." Despite this favorable evidence, the district court concluded there were not substantial and compelling reasons to depart due to Westmoreland's culpability as the ringleader of this marijuana distribution enterprise.

Finally, unlike the motion for a 24-hour continuance of sentencing in *Hunter*, Westmoreland's second motion requested an additional three month continuance, which would have placed the sentencing date nearly six months after his conviction. It is well established that a district court must be afforded considerable latitude in controlling its docket to avoid procrastination and delay and to expedite the orderly flow of its business. *State v. Borders*, 255 Kan. 871, 875, 879 P.2d 620 (1994). The district court did not violate Westmoreland's due process rights by declining to grant the full three-month continuance of sentencing.

Affirmed.

16